

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-1-2002

# Johnson v. Elk Lake Sch Dist

Precedential or Non-Precedential:

Docket 0-1549

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Johnson v. Elk Lake Sch Dist" (2002). *2002 Decisions.* Paper 140.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/140

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed March 1, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-1549

BETSY SUE JOHNSON, Appellant

v.

ELK LAKE SCHOOL DISTRICT; WAYNE STEVENS;
CHARLOTTE A. SLOCUM; SCHOOL BOARD ELK LAKE
SCHOOL DISTRICT

On Appeal From the United States District Court
For the Middle District of Pennsylvania
(D.C. Civ. No. 96-cv-01471)
District Judge: Honorable James F. McClure, Jr.

Argued: September 6, 2001

Before: BECKER, Chief Judge, ALITO and
BARRY, Circuit Judges.

(Filed: March 1, 2002)

        PETER G. LOFTUS, ESQUIRE
         (ARGUED)
        The Loftus Law Firm, P.C.
        P.O. Box V, 1207 Main Street
        Waverly, PA 18471

        Counsel for Appellant

JEFFREY H. QUINN, ESQUIRE
  (ARGUED)
Dickie, McCamey & Chilcote, P.C.
150 South Independence Mall, West
901 Public Ledger Building
Philadelphia, PA 19106

Counsel for Appellees Elk Lake
School District, Charlotte A. Slocum,
School Board Elk Lake School District

ROBERT A. MAZZONI, ESQUIRE
JULIA K. MUNLEY, ESQUIRE
  (ARGUED)
Mazzoni & Karam
321 Spruce Street
Bank Towers, Suite 201
Scranton, PA 18503

Counsel for Appellee Wayne Stevens

OPINION OF THE COURT

BECKER, Chief Judge.

This case arises out of plaintiff Betsy Sue Johnson's claim that her guidance counselor Wayne Stevens sexually harassed and abused her while she was a high school student in the Elk Lake School District. Johnson sought damages from Stevens in the District Court for the Middle District of Pennsylvania, claiming violations of 42 U.S.C. S 1983 and state tort law. Johnson also sought damages from the School District, the Elk Lake School Board, and District Superintendent Charlotte Slocum (to whom we shall collectively refer as "the Administration"), claiming that they too were liable under S 1983 for having failed to prevent Stevens's abuse.

In essence, Johnson asserted that the Administration knew or should have known of Stevens's propensity for sexual abuse, but was deliberately indifferent to this danger. The District Court granted summary judgment for the Administration, and Johnson appeals. Stevens too

moved for summary judgment, but his motion was denied, and a four-day trial ensued, after which a jury returned a unanimous verdict in his favor. Johnson moved for a new trial on the basis of alleged trial errors. The District Court denied this motion, which Johnson now also appeals.

We agree with the District Court that Johnson has failed to adduce any credible evidence showing that Stevens's supervisors knew or should have known of any danger of abuse at a time at which they could have acted to prevent Johnson's injuries. Accordingly, we will affirm the District Court's order granting summary judgment for the Administration. The principal question arising out of the District Court's denial of the motion for a new trial is whether the Court abused its discretion in refusing to admit the testimony of Karen Radwanski, a former co-worker of Stevens, regarding a bizarre incident in which Stevens allegedly picked her up off the floor in another teacher's office and, in the course of doing so, touched her in the crotch area. Johnson had sought to present this testimony as evidence of Stevens's propensity for sexual abuse under Federal Rule of Evidence 415, which allows for the introduction of evidence of past sexual assaults in civil cases in which the claim for damages is predicated on the defendant's alleged commission of a sexual assault.

In reviewing the District Court's ruling, we are called upon to consider, for the first time, the standards for admission of prior sexual misconduct evidence under Rule 415. We conclude that in considering evidence of past sexual assaults, the trial court need not make a preliminary finding by a preponderance of the evidence under Federal Rule of Evidence 104(a) that the act in question qualifies as a sexual assault and that it was committed by the defendant. Rather, the court may admit the evidence so long as it is satisfied that the evidence is relevant, with relevancy determined by whether a jury could reasonably conclude by a preponderance of the evidence that the past act was a sexual assault and that it was committed by the defendant. See Fed. R. Evid. 104(b).

We also conclude, however, that even when the evidence of a past sexual offense is relevant, the trial court retains discretion to exclude it under Federal Rule of Evidence 403

3

if the evidence's "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." We think that in cases where the past act is demonstrated with specificity and is substantially similar to the act(s) for which the defendant is being sued, it is Congress's intent that the probative value of the similar act be presumed to outweigh Rule 403's concerns. In a case such as this one, however, in which the evidence of the past act of sexual offense is equivocal and the past act differs from the charged act in important ways, we believe that no presumption in favor of admissibility is in order, and that the trial court retains significant authority to exclude the proffered evidence under Rule 403. We conclude that the District Court did not abuse its discretion in excluding Radwanski's testimony, and, finding that Johnson's other allegations of trial error are without merit, will affirm the District Court's order denying Johnson's motion for a new trial.

I. Facts and Procedural History

Johnson entered the Elk Lake School District high school as a freshman in September 1991. Sometime in November or December of that year Johnson began making regular visits to Stevens's office to discuss family difficulties. Johnson contends that shortly thereafter, in December 1991, Stevens began sexually harassing and abusing her. She alleges that for the next two years Stevens repeatedly sent her letters, roses, cards, and other suggestive correspondence, attempted on numerous occasions to hug and kiss her without her consent, and at one point fondled her breasts and vagina.

Johnson's complaint sought relief from both Stevens and the Administration for the violation of her civil rights under 42 U.S.C. SS 1983, 1985, and 1986, as well as for the commission of the torts of conspiracy, negligence, assault and battery, and intentional infliction of emotional distress. The District Court dismissed Johnson's section 1985 and 1986 claims as to all the defendants for failure to state a claim upon which relief could be granted. The Court also

4

dismissed Johnson's state tort claims against the Administration, concluding that such claims were barred by the Pennsylvania Political Subdivisions Tort Claims Act, 42 Pa. Cons. Stat. Ann. SS 8541-64. Johnson does not appeal any of these dismissals. The District Court eventually granted summary judgment for the Administration with respect to the remaining S 1983 claim. The District Court denied Johnson's motion for reconsideration, and Johnson now appeals. We have examined the merits of Johnson's claim against the Administration and for the reasons given in the margin, we conclude that summary judgment was appropriate.1

_____

1. Because the gravamen of Johnson's claim against the Administration was that Stevens had violated her constitutional rights, we need not dwell on this claim in light of the jury verdict finding no constitutional or state tort law violations on the part of Stevens. Nevertheless, we note that Johnson presented no credible evidence demonstrating that school officials knew of the alleged risk of sexual abuse posed by Stevens at a time at which they could have prevented her alleged injuries. See Beers-Capitol v. Whetzel, 256 F.3d 120, 137 (3d Cir. 2001) (requiring plaintiff in a S 1983 action to demonstrate "that the defendant knew of the risk to the plaintiff before the plaintiff 's injury occurred"). She therefore has
failed to establish, as she must under the Supreme Court's decision in Monell v. New York City Department of Social Services, 475 U.S. 469 (1986), that her injuries were caused by a "policy or custom" of the Administration. Id. at 694.

Johnson points to a conversation that took place between her sister, Lisa, and a guidance counselor, Jeffrey LaFrance, as evidence of the school's knowledge of Stevens's abuse. During this conversation Lisa remembers telling LaFrance that "something funny" was going on between her sister and Stevens, but she does not remember mentioning any specific allegations of sexual harassment or abuse. While it is fair to
say that an allegation of "something funny" going on between a student and counselor should have been cause for concern on the part of LaFrance, we are unwilling to say that this allegation alone, without evidence of any specific mention of sexual harassment or abuse, put LaFrance on notice as to an ongoing constitutional violation by Stevens. Moreover, even if we thought that it did, this conversation would still fail
to establish S 1983 liability on the part of the Administration because LaFrance, as a guidance counselor, does not qualify as the type of policy-making or supervisory official on account of whose inaction a municipality may be held liable under S 1983. See Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986).

5

Stevens also moved for summary judgment on Johnson's S 1983 claim against him, as well as on the state tort claims, but the District Court denied his motion. These claims were eventually tried before a jury, which returned a unanimous verdict in favor of Stevens. Following the verdict, Johnson filed a motion for a new trial in which she alleged three flaws in the way the trial had been conducted. The District Court rejected Johnson's motion for a new trial on all three grounds, two of which we address below and one which we describe in the margin.2 Johnson now appeals.

_____

Alternatively, Johnson contends that even if the Administration was not aware of Stevens's abuse of her, it can be held liable for failing to respond to the danger posed by Stevens's well-known proclivity for sexually harassing and abusing female students. In other words, Johnson attempts to demonstrate that the Administration had a custom of being deliberately indifferent to Stevens's potential for committing constitutional violations, and that this "deliberate indifference" was the proximate cause of the injuries she sustained. See Beck v. City of Pittsburgh, 89 F.3d 966, 973-74 (3d Cir. 1996); Kneipp v. Tedder, 95 F.3d 1199, 1213 (3d Cir. 1996).

As evidence of Stevens's proclivity for sexual harassment, Johnson brought forth various stories and rumors about Stevens walking too closely to female students in the hallway, frequently calling female students out of class to his office, and giving gifts to female students. Even if all of these allegations were true, however, Johnson presented no evidence that they were ever brought to the attention of a supervisory or policy-making official of the administration either before or during (or even after) the time of Stevens's alleged abuse of Johnson. Moreover, even if school officials had been made aware of these stories before or during Stevens's alleged improper relationship with Johnson, we share the District Court's reluctance "to impose on the district an obligation to treat as true, all rumors, until proven otherwise." In the absence of any direct complaints made to school officials, the mere floating around of unsubstantiated rumors regarding a particular employee -- particularly in the high school setting, which is notoriously rife with adolescent gossip -- does not constitute the kind of notice for which a school district can be held liable under Monell's "policy or custom" requirement.

2. During cross-examination, Johnson's counsel sought to question Stevens about having lied about making the dean's list in college on the resume he submitted when he first applied for a job with the Elk Lake

First, Johnson alleges that the District Court erred by not
declaring a mistrial when Stevens's counsel mentioned to
the jury in his opening statement that his client had never
been arrested for any crime relating to the alleged incidents

_____

School District. Stevens's attorney objected before Johnson's counsel
began the inquiry, contending that the issue was far too remote in time
and relevance to have any bearing on Stevens's credibility as a witness.
The trial judge agreed, sustaining the objection because he thought the
inquiry too "out in left field" to have any"immediate bearing on the
case." Johnson argues that the District Court erred under Federal Rule
of Evidence 608(b), which allows inquiry into specific instances of
conduct that "concern[ ] the witness' character for truthfulness or
untruthfulness" during cross-examination.

We review a district court's evidentiary rulings for abuse of discretion.
See Abrams v. Lightolier Inc., 50 F.3d 1204, 1213 (3d Cir. 1995).
Moreover, where the applicable evidentiary rule is itself discretionary,
as
it is here, see Fed. R. Evid. 608(b) (stating that specific instances of
conduct "may" be inquired into "at the discretion of the court"), we give
the trial court's ruling "substantial deference." Elcock v. Kmart Corp.,
233
F.3d 734, 754 (3d Cir. 2000) (quoting Hurley v. Atlantic City Police
Dep't,
174 F.3d 95, 110 (3d Cir. 1999)).

Although lying about the dean's list is arguably probative of Stevens's
character for untruthfulness, the District Court acted within its
discretion when it concluded that the remoteness in time of the incident
-- Stevens submitted the resume more than nine years before the trial
-- substantially diminished its probative value. See 4 Weinstein's Federal
Evidence (Joseph M. McLaughlin ed., 2d ed. 2001), S 608.22[2][c], at
608-63 & nn.42-43 (noting that "remoteness in time" is a factor properly
considered by the trial court in limiting cross-examination under Rule
608(b)). Furthermore, the trial court was within its discretion to
conclude
that Stevens's lying on his resume, although duplicitous and wrong, was
not so indicative of moral turpitude as to be particularly probative of
his
character for untruthfulness. See id. at 608-64 (recognizing "[t]he
character of the previous conduct" as another factor properly considered
by the trial court under Rule 608(b)).

In addition to the Rule 608(b) argument, Johnson also contends that
the questioning should have been allowed under Federal Rule of
Evidence 405(b), which permits evidence of specific instances of conduct
when "character or a trait of character of a person is an essential
element of a charge, claim, or defense." This argument is misplaced,
however, for Stevens's character is not an essential element of any of the
charges against him.

with Johnson. The District Court, however, found that no new trial was warranted because the Court's prompt admonition to the jury to disregard the statement cured any potential prejudice.

Second, as noted above, Johnson contends that the District Court erred in refusing to permit Radwanski to testify as to the touching incident with Stevens under Federal Rule of Evidence 415. Although it did not state so explicitly, it appears to us that the District Court excluded the evidence pursuant to Federal Rule of Evidence 403's balancing inquiry, concluding that the slim probative value of Radwanski's testimony was outweighed by its potential for unfairly prejudicing Stevens, misleading the jury, confusing the issues, and wasting time.

II. Remarks by Stevens's Counsel in His Opening Statement.

Near the end of his opening statement, Stevens's attorney commented, "Betsy Sue Johnson reported [the allegations regarding Stevens] in July of 1995. She talked to the state police. No arrest." Shortly thereafter, upon the completion of Stevens's attorney's opening statement, Johnson's attorney approached the bench and objected to opposing counsel's mention of "[n]o arrest," asking the trial judge to declare a mistrial. The judge denied Johnson's motion, but indicated that he would instruct the jury to ignore what Stevens's counsel had just said.

Soon thereafter the judge told the jury:

> The one thing I do want to tell you as a result of [the sidebar conference] is that the reference by Mr. Mazzoni [Stevens's counsel] in his opening to what did or did not happen to Mr. Stevens as a result of the complaint being lodged with the police is immaterial in this case. Forget about that. It has nothing to do with your determination in this case as to what happened.

After the jury returned its verdict in favor of Stevens, Johnson moved for a new trial in part based on her assertion that the District Court erred in denying her request for a mistrial. Johnson argued that the opposing

8

counsel's improper reference to "[n]o arrest" influenced the jury's verdict. The District Court disagreed, finding that the limited nature of the improper reference, as well as the clear and strong curative instructions given to the jury upon plaintiff's objection, "rendered it extremely unlikely that the verdict, rendered three days later, was influenced in the slightest respect by the improper statement."

We review the District Court's denial of a motion for a new trial for abuse of discretion. See Blanche Rd. Corp. v. Bensalem Twp., 57 F.3d 253, 264 (3d Cir. 1995). Such a deferential standard of review is appropriate because "the trial judge . . . is in a far better position than we to appraise the effect of the improper argument of counsel." Fineman v. Armstrong World Indus., Inc., 980 F.2d 171, 207 (3d Cir. 1992) (quoting Reed v. Phila. Bethlehem & New England R.R. Co., 939 F.2d 128, 133 (3d Cir. 1991)).

There is no doubt that the mention of "[n]o arrest" by Stevens's attorney was improper, for evidence of non-arrest, like evidence of nonprosecution or acquittal of a crime, is generally inadmissible in a civil trial concerning the same incident. See Am. Home Assurance Co. v. Sunshine Supermarket, Inc., 753 F.2d 321, 325 (3d Cir. 1985). This rule is primarily based on the fact that criminal and civil trials require different burdens of proof for proving guilt and liability, respectively. A decision not to arrest, therefore, may be based on law enforcement authorities' belief that they would be unable to prove to a jury beyond a reasonable doubt that the defendant committed the suspected crime, which does not necessarily indicate that a plaintiff cannot prove the same by a preponderance of the evidence in a civil trial. Furthermore, the decision not to arrest may take into account many factors irrelevant to a civil suit, such as the allocation of law enforcement resources and other considerations of prosecutorial discretion. See id. Because the probative value of evidence of non-arrest is very limited, courts exclude it in order to avoid the danger of the jury in a civil trial exaggerating its worth. Cf. 5 Weinstein's Federal Evidence (Joseph M. McLaughlin ed., 2d ed. 2001), S 803.28[7], at 803-134

9

(discussing the reasons for the exclusion of judgments of acquittal).3

As an initial matter, it is important to recognize that the "[n]o arrest" comment, as part of Stevens's attorney's opening statement, was never formally admitted into evidence.4 Upon being alerted to the inappropriateness of the comment by Johnson's attorney, the trial judge swiftly moved to remedy the situation by instructing the jury to disregard this statement. The District Court, therefore, never endorsed as admissible the inappropriate comment of defense counsel.

To be sure, there are exceptional situations in which a new trial should be granted due to an attorney's inappropriate remarks even when the trial judge issues curative instructions. This is because, as the Supreme Court recognized in Bruton v. United States, 391 U.S. 123 (1968), jury instructions to disregard particular statements can sometimes be "intrinsically ineffective" because the "nonadmissible declaration cannot be wiped from the brains of the jurors." Id. at 129 (quoting Delli Paoli v. United States, 352 U.S. 232, 247 (1957) (Frankfurter, J., dissenting)).

Despite these concerns, our system of justice, particularly in the civil context, where the consequences of

_____

3. Moreover, to the extent that a decision not to arrest is likely based on knowledge outside the personal experience of the law enforcement official responsible for the decision, it amounts to an inadmissible opinion under Federal Rules of Evidence 602 and 701. See Am. Home Assurance Co., 753 F.2d at 325.

4. This is in contrast to cases like American Home and Galbraith v. Hartford Fire Insurance Co., 464 F.2d 225 (3d Cir. 1972), in which we reversed in part because the trial judges affirmatively permitted counsel to introduce evidence of nonprosecution. In American Home, for example, the plaintiff insurance company filed a motion in limine to prevent the introduction of evidence of nonprosecution for defendant's alleged arson. The trial court allowed the evidence to be introduced under certain circumstances, and we reversed, holding that "[t]he admission of this evidence" was error. 753 F.2d at 325. In Galbraith, the trial court allowed the defendant to testify as to his nonprosecution. 464 F.2d at 226. We reversed, noting that this testimony was inadmissible and "highly prejudicial." Id. at 227.

jury error are not as grave as in the criminal setting, "relies upon the ability of the jury to follow instructions." Opper v. United States, 348 U.S. 84, 95 (1954). Even in the criminal context, exceptions to this general presumption are rare, made only when there is an "overwhelming probability that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be devastating to the defendant." Greer v. Miller, 483 U.S. 756, 766 n.8 (1987) (internal quotation marks and citations omitted). Consequently, because the District Court gave clear instructions promptly upon plaintiff 's objection to the mention of "[n]o arrest," we assume that the jury followed these instructions and ignored the inappropriate remark. We therefore conclude that the District Court did not abuse its discretion in declining to grant a mistrial in response to Stevens's attorney's improper remarks.[5]

_____

5. Moreover, the particular circumstances of this incident lead us to believe that it is not "reasonably probable that the verdict was influenced by prejudicial statements." Greenleaf v. Garlock, Inc., 174 F.3d 352, 363–64 (3d Cir. 1999) (internal quotation marks and citations omitted). Notably, the remark was an isolated incident occurring on the first day -- indeed, within the first hour -- of a four-day trial, and likely faded from the jurors' memories as the trial wore on. This fact distinguishes this case from others in which our sister courts of appeals have found that a new trial is warranted even when the trial judge instructed the jury to ignore counsel's prejudicial remarks. See Rabon v. Great Southwest Fire Ins. Co., 818 F.2d 306 (4th Cir. 1987) (counsel made repeated references to nonprosecution in his closing argument); Roberts v. State Farm Fire & Casualty Co., 809 F.2d 1247, 1251 (6th Cir. 1987) (counsel emphasized nonprosecution in both his opening statement and closing argument, and was also permitted to question witnesses about the subject).

Furthermore, the reference to non-arrest here was not particularly inflammatory, consisting only of the matter-of-fact utterance "[n]o arrest." By contrast, in Rabon, which was a civil arson trial, the defendant's attorney used the issue of nonprosecution to berate the plaintiff insurance company in his closing argument, making outrageous statements like, "They are asking you to do what they couldn't get done in criminal courts," and "[A]fter law enforcement investigated this matter, they dismissed the charges, and nobody has gone forward with it but [the insurance company's private investigator]." 818 F.2d at 308. The non-inflammatory nature of Stevens's counsel's remark makes it much more likely that the jury was able to heed the Court's instructions to ignore it.

11

III. Exclusion of Radwanski's Testimony Under Rule 415

A. The Incident

During the course of the trial, Johnson attempted to introduce the testimony of Karen Radwanski, a teacher's associate in the high school's restaurant training program and a friend of Stevens, regarding an incident in which Stevens allegedly sexually assaulted her in the office of another teacher, Tony Blaisure. Radwanski had just walked into the office carrying lunch when Stevens allegedly picked her up and threw her over his shoulder. According to Radwanski, who was wearing a skirt at the time, Stevens's hand went up her skirt and touched her in the crotch area while he raised her off the floor. Stevens soon let her down to the floor and the two of them, along with Blaisure, proceeded to sit down and eat lunch together.

Whether Stevens's alleged touching of Radwanski's crotch was intentional or accidental is unclear from the record, as Radwanski offered somewhat inconsistent accounts of the incident. In her deposition Radwanski was asked whether Stevens's finger "linger[ed] . . . on [her] crotch for any period of time." She responded, "I have to say no." In an earlier interview conducted by Johnson's attorney outside the presence of opposing counsel, Radwanski, under oath, was asked if Stevens had "left his hand [on her crotch] for a while, a moment, two moments or so," to which she responded, "Yeah." When asked during her deposition whether she thought the touching was intentional, Radwanski seemed unsure: "I guess maybe at the time I didn't feel right, but I guess the greater part of me not wanting to think anything was just like, you know, shrugged it off, no big deal."

B. The District Court's Ruling

Federal Rule of Evidence 415 permits the introduction of evidence of a similar "offense . . . of sexual assault" in a civil trial in which a claim for damages, as in this case, "is predicated on a party's alleged commission of conduct constituting an offense of sexual assault. . . ." Pursuant to

this rule, Johnson sought to introduce Karen Radwanski's testimony as to the alleged touching incident in an effort to establish Stevens's propensity for sexual abuse. The District Court, however, refused to permit Radwanski to testify because it concluded that the touching incident did not qualify as an "offense of sexual assault" under the applicable definition provided by Rule 413(d).6 The District

_____

6. As an alternative ground for excluding Radwanski's testimony, the District Court suggested that Johnson had failed to abide by Rule 415's disclosure requirement. We disagree. Rule 415(b) requires that:

> A party who intends to offer evidence under this Rule shall disclose
> the evidence to the party against whom it will be offered, including
> statements of witnesses or a summary of the substance of any
> testimony that is expected to be offered, at least fifteen days before
> the scheduled date of trial or at such later time as the court may
> allow for good cause.

Johnson claimed that because defense counsel had been present at Radwanski's deposition, during which the touching incident had been inquired into by both parties, Stevens was fully aware that Radwanski was likely to testify as to the incident at trial, particularly because Johnson's pretrial memorandum, which was filed more than two years before the trial began, listed Radwanski as a witness and included Radwanski's deposition in its List of Exhibits. The District Court, however, found this argument unconvincing, appearing to conclude that Rule 415(b) required Johnson to provide some form of special notification of her intent to introduce past sexual assault evidence under Rule 415. Since Johnson had failed to provide any such special notification, she was precluded from presenting Radwanski's testimony.

We acknowledge that there are some advantages to the District Court's interpretation of Rule 415(b), especially from the standpoint of trial management. Providing specific notice of an intent to present evidence under Rule 415 may prompt defense counsel to raise the issue in a pretrial motion in limine rather than in the midst of trial, thereby enabling the trial judge to focus more sharply on the issue.

Despite these countervailing considerations, we think that in this case the primary purpose of Rule 415(b)'s disclosure provision -- preventing a plaintiff from unfairly surprising a defendant at trial with evidence of an alleged past offense of sexual assault -- was not offended. Cf. United States v. Carter, 756 F.2d 310, 311-12 (3d Cir. 1985) (declining to reverse conviction where government failed to provide list of "alibi rebuttal" witnesses to the defendant as required by Fed. R. Crim. P. 12.1

13

Court excluded the testimony without holding an in limine hearing on the matter, as requested by Johnson. 7

The precise basis for the District Court's conclusion that the touching incident did not meet Rule 413's definition of an "offense of sexual assault" is not clear, as the Court did not make a formal finding on the issue. Rather, it resolved the matter in several statements that appear in the trial transcript. It appears from these passages and from the opinion accompanying the denial of Johnson's motion for a new trial that the Court was particularly troubled by concerns about the intentionality of Stevens's conduct. In its remarks on the record, the Court stated:

> I think there's insufficient evidence that the touching was in any way intentional. . . . It was obviously a part of horseplay in the presence of another person, and the conduct of the parties indicated at the time that it was not viewed as an intentional touching of that area.

As further evidence of the lack of intentional conduct on the part of Stevens, the Court considered it important that Radwanski declined to mention the incident to the state police when being interviewed in connection with Johnson's criminal complaint against Stevens. As the Court noted, "I have great uncertainty that [the touching incident] qualifies as a sexual assault under any of [Rule 413's] terms when [Radwanski] didn't think it was sufficiently offensive to tell the state police when she's being interviewed about this conduct."

_____

and this failure did not result in any "surprise" to the defendant at trial).
Because defense counsel was present at Radwanski's deposition and questioned her specifically about the touching incident, we think that the evidence had been adduced in such a way that Stevens would reasonably understand its significance. Consequently, permitting Radwanski to testify as to the incident at trial would not have unfairly surprised Stevens, and we cannot say that Rule 415(b)'s disclosure provision was offended.

7. Actually, at trial Johnson objected to the Court's refusal to hold an "in camera proceeding." We assume, however, that what Johnson was requesting was not an in camera proceeding but an in limine hearing.

While it did not do so in terms, our reading of the transcript persuades us that what the Court really did was to engage in a kind of balancing exercise, see Fed. R. Evid. 403, whereby it excluded the evidence because its slight probative value was outweighed by other factors such as the danger of unfair prejudice, confusion of the issues, and waste of time.

## C. History and Background of Rules 413-15

Federal Rules of Evidence 413-15 are relatively recent additions to the Rules, adopted by Congress as part of the Violent Crime Control and Law Enforcement Act of 1994. Pub. L. No. 103-322, 108 Stat. 1796 (1994). Evidence law has historically prohibited the admission into evidence of "other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). Rules 413-15 establish exceptions to the general prohibition on character evidence in cases involving sexual assault and child molestation. Rules 413 and 414 apply to criminal proceedings, while Rule 415 applies to civil trials.

Ever since their initial proposal, Rules 413-15 have been met with hostility by the legal establishment. See Judicial Conference of the U.S., Report of the Judicial Conference on the Admission of Character Evidence in Certain Sexual Misconduct Cases, 159 F.R.D. 51, 52 (1995) [hereinafter Judicial Conference Report] (observing the opposition of an "overwhelming majority of judges, lawyers, law professors, and legal organizations" to the proposed rules); Christopher B. Mueller & Laird C. Kirkpatrick, Evidence Under the Rules 475 (3d ed. 1996) (noting that "the professional reaction to [Rules 413-15] has been strongly negative"). Although Congress bypassed the ordinary rulemaking procedures when adopting Rules 413-15, the enacting legislation provided the Judicial Conference 150 days within which to make and submit alternative recommendations on the rules to Congress. The Judicial Conference's Advisory Committee on Evidence Rules, with what it noted was "highly unusual unanimity," ardently opposed the new rules, fearing that they "could diminish significantly the protections that have safeguarded persons accused in criminal cases and parties

15

in civil cases against undue prejudice." Judicial Conference Report, 159 F.R.D. at 53. Embracing the views of the Advisory Committee, the Conference recommended that Congress "reconsider its policy determinations underlying Evidence Rules 413-415" or, in the alternative, adopt amendments to Rules 404 and 405 proposed by the Advisory Committee. Id. at 54. Congress rejected both alternatives, and the rules stand today as originally enacted.

D. Standards for Admission of Evidence under Rule 415

In order for evidence of a past act to be admitted under Rule 415, the District Court must determine whether the act satisfies the applicable definition of an "offense of sexual assault" provided by Rule 413(d), which states:

> For purposes of this rule and Rule 415, "offense of sexual assault" means a crime under Federal law or the law of a State . . . that involved --
>
> (1) any conduct proscribed by chapter 109A of title 18, United States Code;
>
> (2) contact, without consent, between any part of the defendant's body or an object and the genitals or anus of another person;
>
> (3) contact, without consent, between the genitals or anus of the defendant and any part of another person's body;
>
> (4) deriving sexual pleasure or gratification from the infliction of death, bodily injury, or physical pain on another person; or
>
> (5) an attempt or conspiracy to engage in conduct described in paragraphs (1)-(4).

Although the language of Rule 413(d) is ambiguous as to whether the past "offense of sexual assault" must be a conviction, the legislative history of Rules 413-15 indicates that Congress intended to allow admission not only of prior convictions for sexual offenses, but also of uncharged conduct. See 140 Cong. Rec. 23,603 (1994) (Statement of

16

Rep. Molinari) ("The practical effect of the new rules is to put evidence of uncharged offenses in sexual assault and child molestation cases on the same footing as other types of relevant evidence that are not subject to a special exclusionary rule.") (emphasis added); see also United States v. Meacham, 115 F.3d 1488, 1492 (10th Cir. 1997); 2 Weinstein's Federal Evidence (Joseph M. McLaughlin ed., 2d ed. 2001), S 413.03[1], at 413-6-7. But see 140 Cong. Rec. 15,209 (1994) (statement of Rep. Kyl) (stating that the new rules will not apply to "allegations" but only to "prior offenses" where "an accused has been convicted of similar conduct") (emphasis added).

While uncharged conduct is admissible under Rule 415, some limits, of course, need to be placed on its admissibility in order to ensure that the plaintiff may not "parade past the jury a litany of potentially prejudicial similar acts that have been established or connected to the defendant only by unsubstantiated innuendo." Huddleston v. United States, 485 U.S. 681, 689 (1988). At the same time, for reasons of judicial efficiency and economy, the district court cannot be expected to conduct a "trial within a trial" to determine the veracity of the proffered evidence. So exactly what must a district court do before deciding whether to admit or exclude evidence of prior sexual assaults under Rules 413-15? The text of Rules 413-15 is silent on this issue, and the Supreme Court has never answered this question in the specific context of these rules. The Supreme Court has, however, in Huddleston, considered the same issue in the context of Federal Rule of Evidence 404(b), which allows for the introduction of evidence of "other crimes, wrongs, or acts" to prove issues other than character.

In Huddleston, the prosecution introduced evidence of another act of the defendant in an attempt to prove his knowledge of the crime for which he was being tried, consistent with Rule 404(b). Arguing that "evidence of similar acts has a grave potential for causing improper prejudice," the defendant submitted that to avoid this danger the trial court must make a preliminary finding by a preponderance of the evidence under Federal Rule of Evidence 104(a) that the defendant committed the past act.

17

485 U.S. at 686-87. The Supreme Court, in a unanimous opinion, rejected the defendant's position, concluding "that a preliminary finding by the court that the Government has proved the act by a preponderance of the evidence is not called for under Rule 104(a)." Id. at 689. Instead, the Court identified Rule 104(b), which governs the relevancy of evidence conditioned on fact, as the applicable safeguard against the risk of introducing prejudicial unsubstantiated evidence.

Huddleston identified Rule 104(b) as appropriate because the question of the defendant's commission of the past act "was simply one of conditional relevancy -- the relevancy of the bad act is conditioned on the defendant's having committed it." Federal Rules of Evidence Manual 388-89 (Stephen A. Saltzburg et al. eds., 7th ed. 1998). Under Rule 104(b), no preliminary finding is required; rather, the trial "court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact -- [whether the defendant committed the prior act] -- by a preponderance of the evidence." Huddleston, 485 U.S. at 690.

To recapitulate, Huddleston does not require that a trial judge make a finding by a preponderance of the evidence; it simply requires the judge to ask whether "a jury could reasonably" make such a finding. Presumably, this once-removed determination of the trial judge lowers the burden for the party seeking to introduce the prior act evidence, although exactly by how much is hard to say, as the standard appears designed to provide the trial court substantial discretion in admitting conditionally relevant information. See id. at 690.

In part because of the similarity between Rules 404(b) and Rules 413-15 -- both allow the admission of past acts, including uncharged conduct, albeit for different purposes -- the few courts and commentators that have considered the issue have concluded that Huddleston's standard for screening uncharged conduct applies to Rules 413-15. See United States v. Enjady, 134 F.3d 1427, 1433 (10th Cir. 1998); 2 Weinstein's Federal Evidence, S 413.03[1], at 413-7. As explained in the margin, we find this position somewhat problematic in light of the difference between the

18

types of evidence that are likely to be introduced under Rules 404(b) and 413-15: the former allows for the introduction of "other crimes, wrongs, or acts," whereas the latter allow evidence of offenses of sexual assault or child molestation.[8] Were it within our power to select the better rule, therefore, we would be inclined to adopt the more exacting standard for the admission of past act evidence rejected by the Court in Huddleston: a preponderance of the evidence finding under Rule 104(a). We find ourselves constrained from doing so, however, by the texts of Rules 413-15 as well as by their legislative history, which indicates that Congress intended that the Huddleston standard apply in this context.

As noted above, the texts of Rules 413-15 are silent as to the appropriate standard for admitting evidence of past acts of sexual assault. Following the Court's reasoning in Huddleston, this silence alone is an important reason for not imposing a Rule 104(a) requirement on evidence introduced under Rules 413-15. In interpreting Rule 404(b), the Huddleston Court considered it important that Rule 404(b)'s "text contains no intimation . . . that any

_____

8. In our view, because of the severe social stigma attached to crimes of sexual assault and child molestation, evidence of these past acts poses a higher risk, on the whole, of influencing the jury to punish the defendant for the similar act rather than the charged act than the type of evidence that is often introduced under Rule 404(b). See Doe ex rel. Rudy-Glanzer v. Glanzer, 232 F.2d 1258, 1268 (9th Cir. 2000) (noting "the strong prejudicial qualities" of evidence submitted under Rule 415) (quoting United States v. Guardia, 135 F.3d 1326, 1330 (10th Cir. 1998)). In light of this higher risk of unfair prejudice, we think the need
to guard against the introduction of unsubstantiated evidence is greater, and would be best addressed by requiring the trial court to make a finding by a preponderance of the evidence under Rule 104(a).

To be sure, certain past acts likely to be introduced under Rule 404(b) are similarly, if not more highly, stigmatized -- such as murders or assaults and batteries -- and thereby present a significant risk of inappropriate punishment. However, many, if not most, of the past acts introduced under Rule 404(b) -- e.g., burglaries, thefts, etc -- are not as
potentially inflammatory as offenses of sexual assault or child molestation. On the whole, therefore, we believe that the risk of unfair prejudice is less in the Rule 404(b) context than in the context of Rules 413-15.

preliminary showing is necessary," and that such a requirement was "nowhere apparent from the language of " the rule. 485 U.S. at 687-88. Similarly, Rules 413-15 do not contain any language indicating that a preliminary finding is necessary.

Moreover, just as in Huddleston the Court noted that the legislative history counseled against imposing a Rule 104(a) finding requirement on evidence introduced under Rule 404(b), see 485 U.S. at 688, the legislative history of Rules 413-15 points to the same conclusion in this context. The principal sponsors of Rules 413-15, Representative Susan Molinari and Senator Robert Dole, declared in their floor statements supporting the new rules that an address delivered to the Evidence section of the Association of American Law Schools by David J. Karp -- then Senior Counsel at the Office of Policy Development at the Department of Justice and the drafter of Rules 413-15 -- was to serve as an "authoritative" part of the Rules' legislative history.9 140 Cong. Rec. 23,602 (1994) (statement of Rep. Molinari); 140 Cong. Rec. 24,799 (1994) (statement of Sen. Dole). In the referenced speech, Mr. Karp stated clearly that "the standard of proof with respect to uncharged offenses under the new rules would be governed by the Supreme Court's decision in Huddleston v. United States." Evidence of Propensity, 70 Chi.-Kent L. Rev. at 19.

Representative Molinari's and Senator Dole's reference to a non-legislator's address is a somewhat unusual method of establishing "authoritative" legislative history.10

_____

9. The address was reprinted as Evidence of Propensity and Probability in Sex Offense Cases and Other Cases, 70 Chi.-Kent L. Rev. 15 (1994) [hereinafter Evidence of Propensity].

10. While relying on the work of a non-legislator is a somewhat unusual method of establishing legislative history, it is not entirely unknown. For instance, the portion of the Private Securities Litigation Reform Act of 1995 that establishes the procedure for selecting a lead plaintiff and for choosing and retaining lead counsel in securities class actions, 15 U.S.C. S 78u-4(a)(3), was clearly based on a law review article by Professors Elliott J. Weiss and John S. Beckerman. See S. Rep. No. 104-98, at 11 n.32 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 690 n.32 (stating that the article -- Let the Money Do the Monitoring: How Institutional Investors

20

Nevertheless, "[w]e are bound by the intent of Congress, as we perceive it," and it appears that this reference to Mr. Karp's address was intended by Congress as a guide to the judiciary in interpreting Rules 413–15.[11]  Sperling v. Hoffmann–La Roche, Inc., 24 F.3d 463, 470 (3d Cir. 1994). Moreover, we can find nothing in the legislative record to the contrary. Consequently, we conclude, albeit with some reluctance, see supra note 8, that Huddleston's standard for the admission of evidence applies to Rule 415. As such, a trial court considering evidence offered under Rule 415 must decide under Rule 104(b) whether a reasonable jury could find by a preponderance of the evidence that the past act was an "offense of sexual assault" under Rule 413(d)'s definition and that it was committed by the defendant.

_____

Can Reduce Agency Costs in Securities Class Actions , 104 Yale L. J. 2053 (1995) -- "provided the basis for the `most adequate Plaintiff ' provision"
of the PSLRA). Although Congress did not refer to the Weiss/Beckerman article as an "authoritative" part of the legislative history -- as Representative Molinari and Senator Dole did here with respect to Mr. Karp's address -- courts interpreting S 78u–4(a)(3) of the PSLRA have nevertheless taken note of Congress's heavy reliance on the Weiss/Beckerman article and given it considerable weight when construing the provision. See, e.g., In re Cendant Corp. Litig., 264 F.3d 201, 262 (3d Cir. 2001).

Similarly, in enacting 11 U.S.C. S 510(b), which provides for the subordination of any claim for damages "arising from the purchase or sale" of a security of the debtor, Congress noted that it was relying heavily on a law review article written by Professors John J. Slain and Homer Kripke, The Interface Between Securities Regulation and Bankruptcy -- Allocating the Risk of Illegal Securities Issuance Between Securityholders and the Issuer's Creditors, 48 N.Y.U. L. Rev. 261 (1973). See H.R. Rep. No. 95-595, at 196 (summarizing the argument in the Slain/Kripke article and stating that "[t]he bill generally adopts the Slain/Kripke position"). The courts construingS 510(b) have accordingly given considerable weight to the Slain/Kripke article. See, e.g., In re Granite Partners, 208 B.R. 332, 336 (Bankr. S.D.N.Y. 1997) ("Any discussion of section 510(b) must begin with the 1973 law review article authored by Professors John J. Slain and Homer Kripke . . . .").

11. Judge Alito agrees that Huddleston applies here for essentially the same reasons given in Huddleston, and he expresses no view on whether this is the best procedure in this situation and does not rely on Mr. Karp's speech, which is discussed supra.

21

Even if a trial court is satisfied that the proffered past act evidence satisfies Rule 104(b), however, it may still exclude it under Federal Rule of Evidence 403, which allows for evidence to "be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Initially, there was some doubt as to whether Rule 403's balancing inquiry was at all applicable to Rules 413–15. Because the rules state that evidence of past sexual offenses "is admissible," some commentators, including the Judicial Conference Advisory Committee on the Rules of Evidence, interpreted this language as possibly indicating that the admission of past sexual offense evidence is mandatory, unconstrained by Rule 403's prejudice inquiry. Judicial Conference Report, 159 F.R.D. at 53.12

It appears from the legislative history of Rules 413–15, however, that despite the seemingly absolutist tone of the "is admissible" language, Congress did not intend for the admission of past sexual offense evidence to be mandatory; rather, Congress contemplated that Rule 403 would apply to Rules 413–15. See, e.g., 140 Cong. Rec. 24,799 (1994) (Statement of Sen. Dole) ("[T]he general standards of the rules of evidence will continue to apply [to Rules 413–15], including . . . the court's authority under rule 403 to exclude evidence whose probative value is substantially outweighed by its prejudicial effect.").13

Having concluded that Rule 403 is applicable to Rules 413–15, we now turn to the manner in which the balancing inquiry ought to be performed. Relying on the legislative

_____

12. While we express no view on the matter, we note that a policy of mandatory admission, particularly in the criminal context, has been thought to raise serious constitutional concerns under the Due Process Clause. See Enjady, 134 F.3d at 1430; Judicial Conference Report, 159 F.R.D. at 53.

13. While we again express no view on the matter, we note that the presence of the Rule 403 safeguard has served to assuage the concerns of at least one of our sister courts of appeals, the Tenth Circuit, regarding the constitutionality of Rules 413–15 under the Due Process Clause. See Enjady, 134 F.3d at 1433.

history, a number of courts and commentators have concluded that Rule 403 should be applied to Rules 413–15 with a thumb on the scale in favor of admissibility. See United States v. Larson, 112 F.3d 600, 604 (2d Cir. 1997) ("With respect to the Rule 403 balancing . . . the sponsors [of Rules 413–15] stated that `[t]he presumption is that the evidence admissible pursuant to these rules is typically relevant and probative, and that its probative value is not outweighed by any risk of prejudice.' ") (quoting 140 Cong. Rec. S12,990 (daily ed. Sept. 20, 1994) (Statement of Sen. Dole)); see also United States v. LeCompte, 131 F.3d 767, 769 (8th Cir. 1997) (noting the "strong legislative judgment that evidence of prior sexual offenses should ordinarily be admissible"). Indeed, in his speech that is referenced as part of the "authoritative" legislative history of Rules 413–15, David Karp observed that there is "an underlying legislative judgment . . . that the sort of evidence that is admissible pursuant to proposed Rules 413–15 is typically relevant and probative, and that its probative value is normally not outweighed by any risk of prejudice or other adverse considerations." Evidence of Propensity, 70 Chi.-Kent L. Rev. at 19.

In our view, this characterization of the role of Rule 403 is overly simplified. It makes sense when the past act sought to be introduced under Rules 413–15 is demonstrated with specificity, see Enjady, 134 F.3d at 1433 (identifying "how clearly the prior act has been proved" as a factor to be considered in assessing the probative value of evidence of past sexual assaults), and is sufficiently similar to the type of sexual assault allegedly committed by the defendant. See United States v. Guardia, 135 F.3d 1326, 1331 (10th Cir. 1998) (noting that"the similarity of the prior acts" to the acts at issue in the case is a factor to be considered in determining their probative value). In these archetypal cases, where the propensity inference that can be drawn from the past act evidence is greatest, Congress surely intended for the probative value of the evidence to outweigh its prejudicial effect, and, conversely, did not want Rule 403 factors such as undue delay, waste of time, confusion of the issues, etc., to justify exclusion. See, e.g., 140 C.R. 15,209 (1994) (Statement of Rep. Kyl) (recognizing as the archetypal case one in which

23

"there is a clear pattern of conduct by an accused who has been convicted of similar conduct") (emphases added).

In other cases, however, where the past act is not substantially similar to the act for which the defendant is being tried, and/or where the past act cannot be demonstrated with sufficient specificity, the propensity inference provided by the past act is weaker, and no presumption in favor of admissibility is warranted. Where a past act cannot be shown with reasonable certainty, its probative value is reduced and it may prejudice the defendant unfairly, confuse the issues, mislead the jury, and result in undue delay and wasted time -- all reasons for excluding evidence under Rule 403. The same can be said of evidence of past acts that are dissimilar to the act for which the defendant is being tried; in particular, the introduction of dissimilar past acts runs the risk of confusing the issues in the trial and wasting valuable time. Also relevant to the Rule 403 balancing analysis are the additional factors recognized by the Tenth Circuit in Guardia: "the closeness in time of the prior acts to the charged acts, the frequency of the prior acts, the presence or lack of intervening events, and the need for evidence beyond the testimony of the defendant and alleged victim." 135 F.3d at 1330 (internal citations omitted).

Finally, it bears repeating that despite these general guidelines, the Rule 403 balancing inquiry is, at its core, an essentially discretionary one that gives the trial court significant latitude to exclude evidence. See Elcock v. Kmart Corp., 233 F.3d 734, 754 (3d Cir. 2000).

E. Discussion

Johnson contends that Radwanski's testimony as to the touching incident with Stevens qualified as an "offense of sexual assault" under Rules 413 and 415, and that the District Court therefore erred in excluding it. Moreover, at trial she objected to the fact that the Court did not hold an in limine hearing on the matter. We apply the legal standards described above, and review the District Court's evidentiary rulings for abuse of discretion, see Abrams v. Lightolier Inc., 50 F.3d 1204, 1213 (3d Cir. 1995), although

our review of the Court's interpretation of the Federal Rules of Evidence is plenary. See United States v. Brown, 254 F.3d 454, 458 (3d Cir. 2001).

The District Court correctly noted that in order for the touching incident to qualify as an "offense of sexual assault" under Rule 413(d)'s definition, Pennsylvania law, as we explain in the margin, requires that the touching have been done intentionally.14 As described in Part I, supra, Radwanski gave conflicting descriptions of the incident. In one account she implied that Stevens's hand merely brushed by her crotch as he lifted her off the ground; in another she indicated that his hand lingered on her crotch for a moment or two. See supra at 12. When asked during her deposition whether she thought the touching incident was intentional, Radwanski replied, "I guess maybe at the time it didn't feel right, but I guess the greater part of me not wanting to think anything just was like, you know, just shrugged it off, no big deal."15

In deciding to exclude Radwanski's testimony, the District Court did not indicate what standard for admission it was applying to the evidence. In keeping with Huddleston, the Court was not obliged to hold an in limine hearing, as requested by Johnson, or make a formal finding under Rule 104(a) when excluding the evidence.16 Under Huddleston,

_____

14. Stevens's touching of Radwanski might be considered a crime of "indecent assault" under Pennsylvania law, 18 Pa. Cons. Stat. Ann. S 3126(a)(1–2), which is defined as consisting of "indecent contact." "Indecent contact," in turn, is defined as touching "for the purpose of arousing or gratifying sexual desire in either person." 18 Pa. Cons. Stat. Ann. S 3101. The "for the purpose of " language of the indecent assault statute clearly establishes that the conduct underlying an offense must have been intentional.

15. We are aware that victims of sexual assault are often hesitant to report their assailants for a variety of reasons. See United States Department of Justice, Bureau of Justice Statistics, National Crime Victimization Survey (2000) (noting that in 1999"rape or sexual assault was [the violent crime] least often reported to law enforcement (28%)"). Indeed, for this reason we do not place too much emphasis on the fact that Radwanski did not report the touching incident to the state police when they interviewed her in response to Johnson's criminal complaint against Stevens, a factor relied on by the District Court.
16. Although an in limine hearing is not required, district courts might find this a useful technique for considering the admission of evidence

25

the Court needed only to ask itself whether a jury could reasonably find by a preponderance of the evidence that Stevens committed the act intentionally, provided that the Court was satisfied that the evidence need not be excluded under Rule 403. Although the Court did not say so explicitly, it appears to us that the Court concluded that Radwanski's testimony did not satisfy Rule 403, and it accordingly -- and appropriately -- bypassed the Huddleston reasonable jury determination.

The basis for the Court's Rule 403 determination seems to have been that Radwanski's equivocal testimony was insufficiently specific as to the intentionality of Stevens's conduct. The District Court stated, "I think there's insufficient evidence that the touching was in any way intentional. . . .". Lacking more specific evidence of intentionality, the Court apparently concluded that the probative value of the evidence was slight and was outweighed by Rule 403's concerns of prejudice, undue delay, waste of time, etc. This judgment appears to us to be sound given the equivocal nature of Radwanski's testimony as regarding the intentionality of Stevens's conduct.17

(Text continued on page 28)

_____

proffered under Rule 415. Moreover, while a formal"finding" under Rule 104(a) is not required, it would be helpful to our reviewing function if district courts would state explicitly their reasons for admitting or excluding evidence under Rules 413-15. See Glanzer, 232 F.3d at 1269 (exhorting the trial court to "make a clear record concerning its decision whether or not to admit such evidence"). The failure of the District Court to be more precise in this case is probably explained by the relative newness of Rule 415. Indeed, this is the first opinion we have written on Rules 413-15 since their promulgation in 1995.

17. In addition to its concerns about the intentionality of Stevens's conduct, the District Court also expressed some worry about the fact that Stevens did not touch Radwanski on the skin, but rather touched her through her clothing. The Court noted:

>   So it would have to again be 413(d)(2). I started to read, contact
>   without consent between any part of the defendant's body or an
>   object in the genitals or anus of another person. Now, the fact
that
>   there was a touching of the crotch, presumably she was clothed and
>   unlike the testimony in our case, the Johnson case, there -- this
>   does not indicate that there was a touching actually of the
genitals

26

themselves as opposed to the crotch area. That may be a fine
distinction, but there is that distinction between that testimony.

It appears to us that the District Court thought that the touching
incident would not qualify as an "offense of sexual assault" under Rule
413(d)'s definition because it did not fit within subsection (2)'s
reference
to "contact, without consent, between any part of the defendant's body
. . . and the genitals . . . of another person." Assuming without deciding
that touching through the clothing would not meet the requirements of
subsection (2) by its literal terms, touching through the clothing does
satisfy the requirements of another subsection of Rule 413(d) --
subsection (1), which refers to "any conduct proscribed by chapter 109A
of title 18, United States Code."

Chapter 109A includes 18 U.S.C. S 2244, which proscribes "abusive
sexual contact." Subsection (b) of S 2244 makes it a criminal offense to
"knowingly engage[ ] in sexual contact with another person without that
other person's permission." (Emphasis added). 18 U.S.C. S 2246 makes
clear that "sexual contact" for the purposes of S 2244's "abusive sexual
contact" offense includes touching "either directly or through the
clothing,
of the genitalia, anus, groin, breast, inner thigh, or buttocks of any
person with an intent to abuse, humiliate, harass, degrade, or arouse or
gratify the sexual desire of any person." (Emphasis added). The fact that
Stevens may have touched Radwanski through the clothing, therefore,
does not preclude the act from qualifying as a sexual offense, provided,
of course, that it meets Rule 413(d)'s threshold requirement of being "a
crime under Federal law or the law of a State."

Under the law of Pennsylvania, skin-to-skin touching is not a
requirement for the commission of a crime of sexual assault.
Pennsylvania law defines "indecent assault" in relevant part as
consisting of "indecent contact" without the complainant's consent or by
forcible compulsion. 18 Pa. Cons. Stat. Ann. S 3126(a)(1-2). "Indecent
contact" is defined as "[a]ny touching of the sexual or other intimate
parts of the person for the purposes of arousing or gratifying sexual
desire, in either person." 18 Pa. Cons. Stat. Ann. S 3101. Unlike its
federal counterpart, Pennsylvania's statutory definition of "indecent
contact" does not explicitly mention whether such contact includes
touching through the clothing. Nevertheless, the Pennsylvania courts
interpreting "indecent contact" have concluded that this term
encompasses touching through the clothing. See Commonwealth v. Ricco,
437 Pa. Super. 629, 634 (1994) (concluding that touching through the
clothing may be considered "indecent contact" and rejecting a per se rule
requiring "skin-to-skin" contact); In the Interest of M.S., a Minor, 10
Pa.

27

Additionally, we find the exclusion of the evidence justifiable for a reason not stressed by the District Court: the differences between Stevens's alleged assaults of Radwanski and Johnson. The former occurred in another teacher's office with that teacher present, involved an adult co-worker of Stevens, and consisted of a bizarre incident in which Stevens lifted Radwanski off the ground and placed her on his shoulders. The latter is said to have taken place with no one else present in Stevens's office, involved a minor to whom Stevens served as guidance counselor, and allegedly involved Stevens making more direct sexual advances upon a much younger female. In our view, these dissimilarities reduced significantly the probative value of Radwanski's testimony. The case law is in accord. See, e.g., Doe ex rel. Glanzer v. Rudy-Glanzer, 232 F.3d 1258, 1269–70 (9th Cir. 2000) (upholding exclusion of prior sexual assault evidence as too dissimilar because of age difference between victims and the dissimilar circumstances of the alleged misconduct).

We also consider it relevant that the alleged touching of Radwanski appears to have been an isolated incident. Although Johnson presented evidence of rumors of Stevens acting inappropriately around female students in her attempt to attach S 1983 liability to the Administration, see supra note 1, during her trial against Stevens she did not attempt to present any other evidence of offenses of sexual assault allegedly perpetrated by Stevens besides the lone incident with Radwanski. While the isolated nature of the incident alone would probably not be enough to warrant excluding it, we nevertheless consider it a relevant factor supporting the District Court's decision. See Guardia, 135

_____

D. & C. 4th 282, 283 (1990) ("The [`indecent contact'] element of `touching' can be established even though the private parts of the victim are touched over the clothing.").

In sum, the mere fact that Radwanski alleged to have been touched through her clothing and not directly on her skin does not preclude the incident from qualifying as an "offense of sexual assault" under Rule 413(d)'s definition. Hence, to the extent that the District Court's comment indicates that it excluded Radwanski's testimony on the basis of this factor, it was in error, though not error of consequence.

F.3d at 1331 (recognizing "the frequency of the prior acts" as a factor in determining the evidence's probative value).

In sum, the uncertainty of the testimony regarding intentionality, the dissimilarities between the similar and alleged acts, and the isolated nature of the Radwanski incident reduced significantly the probative value of Radwanski's testimony. Given this reduced probative value, any presumption in favor of admissibility was unwarranted, and the District Court's exclusion of the evidence can be justified on grounds that its introduction might have prejudiced Stevens unfairly, misled the jury, confused the issues, and wasted valuable trial time. Accordingly, we cannot say that the Court abused its discretion in excluding Radwanski's testimony.

Conclusion

For the foregoing reasons, we will affirm the District Court's order granting summary judgment to the Administration and its order denying Johnson's motion for a new trial.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

29